**FILED**

**OCT – 4 2023**

**U. S. DISTRICT COURT**
**EASTERN DISTRICT OF MO**
**ST. LOUIS**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| SYLVIA STEVENSON, | ) | |
| | ) | **4:23CR537-MTS/NCC** |
| Defendant. | ) | |

## INDICTMENT

The Grand Jury charges:

At all times material to this Indictment:

### Background

1.      The defendant, **SYLVIA STEVENSON**, was a resident of the Eastern District of Missouri.

2.      **STEVENSON** filed a Registration of Fictitious Name for Stevenson Income Tax Service on April 2, 2008, April 22, 2013, and July 27, 2013.

3.      **STEVENSON** established a Missouri company known as Stevenson Enterprise Co., LLC on or about January 29, 2010.

4.      **STEVENSON** established a Missouri company known as Stevenson Income Tax Service LLC on or about January 3, 2017.

5.      **STEVENSON** established a Missouri company known as Capris Entertainment LLC on or about November 25, 2019.  A Registration of Fictitious Name was filed for Capris Lounge on November 25, 2019.  Capris Entertainment LLC was listed as a 100% owner of Capris Lounge.

1

6.      Sylvia Stevenson was not a Missouri company or LLC registered with the Missouri Secretary of State.

7.      **STEVENSON** was a signatory on the following accounts:

a.      U.S. Bank account ending in 0551, in the name of Stevenson Income Tax Service LLC, 1756 Thunderbird Ave, Florissant MO 63033;

b.      U.S. Bank account ending in 0544, in the name of Stevenson Income Tax Service LLC, 4166 Fox Crossing Drive, Florissant MO 63034;

c.      U.S. Bank account ending in 8104, in the name of Capris Entertainment LLC, 8911 Natural Bridge Rd., Saint Louis, MO 63121-3916;

d.      U.S. Bank account ending in 8096, in the name of Capris Entertainment LLC, 8911 Natural Bridge Rd., Saint Louis, MO 63121-3916.

### Federal Assistance to Businesses Impacted by the COVID-19 Pandemic

8.      The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and assisting in the economic recovery of communities after disasters.  As part of this effort, the SBA enabled and provided loans through banks, credit unions, and other lenders.  These loans had government-backed guarantees.

9.      In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 pandemic emergency.  Among its various provisions, the CARES Act authorized the SBA to guarantee loans under the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan ("EIDL") program.

The Paycheck Protection Program

10.     The PPP was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and other expenses.  The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable, and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic.  PPP loans were fully guaranteed by the SBA.

11.     To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business.  The SBA Form 2483 was to include supporting payroll documentation submitted to a financial institution that would administer the loan and serve as custodian of the funds.  The applicant was required to certify information regarding business operations, including that:  (a) the applicant was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes, or paid independent contractors, as reported on Internal Revenue Service (IRS) Form 1099-MISC; (b) current economic uncertainty mad the loan request necessary to support the applicant's ongoing operations; and (c) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

12.     When submitting the SBA Form 2483, the applicant certified her understanding that, should the PPP funds knowingly be used for unauthorized purposes, the United States could hold her legally liable, including criminal penalties for fraud involving fines and up to thirty years' imprisonment.  The applicant was also required to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents, including documents submitted to verify the applicant's payroll expenses such as payroll processor records, bank records, wage

3

records, payroll tax filings with the IRS, or other records sufficient to show the qualifying payroll amount.

13.     PPP loan applications were electronically submitted or caused to be submitted by the applicant and received through SBA servers located in Virginia for applications submitted prior to January 11, 2021, and Oregon for applications submitted thereafter.   Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

14.     The proceeds of the PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments.  The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

15.     U.S. Bank was a third-party participating lender in the PPP and a federally insured financial institution as defined in Title 18, United States Code, Section 20.

<u>The Economic Injury Disaster Loan Program</u>

16.     The Economic Injury Disaster Loan (EIDL) program was expanded by the CARES Act to provide funding to help small businesses recover from the economic impacts of the COVID-19 pandemic.  The EIDL program provided long-term loans with favorable borrowing terms that could be used to cover a wide array of normal operating expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments.  If an applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

4

17.     The SBA Office of Disaster Assistance controls the EIDL program and is headquartered in Washington, DC. The ODA has authority over all loans issued and disbursed under the EIDL program. EIDL principal proceeds are solely funded by the SBA and are disbursed from government-controlled accounts maintained with the U.S. Treasury at Federal Reserve Banks throughout the United States. Funds are deposited via Automatic Clearing House transfers which are a type of electronic bank transfer. All payments are processed by the SBA from Denver, Colorado.

18.     Applications for EIDL funds were submitted electronically to the SBA by the potential borrower on a Rapid Intake Form. In addition to identification information relating to the applicant and the business entity, the applicant was required to submit financial information about the business such as, among other things, its gross revenue and cost of goods sold for the twelve months prior to the date of the disaster, or January 31, 2020.

19.     EIDL applications were processed by the SBA and, if approved, funds were transferred directly from the SBA to the bank account specified on the application. EIDL funds were low-interest, fixed-rate, long-term loans, guaranteed by the SBA that were not forgivable and must be repaid.

20.     Finally, the applicant was required to certify the truthfulness of the information submitted on the application and was expressly advised that making a false statement on the application for a loan was punishable by law with civil and criminal penalties including fines and imprisonment.

<u>Economic Injury Disaster Loan Advance Funds</u>

21.     The EIDL Advance funds were awarded to existing COVID EIDL applicants who met certain criteria. Advances are like grants, but without the typical U.S. government grant

5

requirements.  These advances do not need to be repaid.  Eligible applicants must have been in SBA-specified low-income communities and must have suffered reductions in revenue.  Targeted EIDL Advances of up to $10,000 required location in a low-income community, 300 or fewer employees, and greater than a 30% reduction in revenue.  Supplemental Targeted Advances of up to $5,000 additional above the $10,000 Targeted Advance required location in a low-income community, ten or fewer employees, and greater than 50% reduction in revenue.

22.     Beginning on January 1, 2022, the SBA stopped accepting new applications for COVID-19 EIDL loans and advances.

### The Scheme

23.     Beginning no later than in or around March 2020, and continuing through at least in or around January 2022, in the Eastern District of Missouri and elsewhere, the defendant,

**SYLVIA STEVENSON**,

knowingly executed and attempted to execute a scheme or artifice to defraud a financial institution and to obtain moneys, funds, credits, assets, securities, and other property owned by, or under the custody and control of a financial institution by means of false and fraudulent pretenses, representations, and promises.

### Manner and Means

It was part of the scheme that:

Stevenson Enterprise Company d/b/a Stevenson Income Tax Service EIDL

24.     On or about March 31, 2020, **STEVENSON** submitted and caused to be submitted a false and fraudulent EIDL application to the SBA on behalf of Stevenson Enterprise Company LLC d/b/a Stevenson Income Tax Service ("Stevenson Enterprise") in which she stated that Stevenson Income Tax Service had one employee, combined annual operating expenses of

6

$30,000 for secular social serviced [sic] provided by the faith based entity, gross revenues of $50,000, and a cost of goods sold of $2,500 for the twelve months preceding January 31, 2020. **STEVENSON** listed Stevenson Enterprise as a faith-based entity established on January 1, 2000, with a primary address of the business as 1756 Thunderbird Drive, Florissant, Missouri 63022. **STEVENSON** also submitted a Targeted Advance Application for Stevenson Enterprise.

25.    **STEVENSON**'s representations on the March 31, 2020, application on behalf of Stevenson Enterprise caused the SBA to approve EIDL loan number 2916247801 and deposit funds into the Stevenson Income Tax Service U.S. Bank account ending in 0051:

      a.    $1,000 in advance funds on April 21, 2020;

      b.    $22,800 in loan proceeds on May 27, 2020;

      c.    $5,000 in advance funds on July 8, 2021; and

      d.    $9,000 in loan proceeds on July 12, 2021.

26.    On or about April 6, 2020, **STEVENSON** submitted and caused to be submitted a false and fraudulent EIDL application to the SBA on behalf of Stevenson Enterprise in which she claimed a business establishment date of October 15, 1990, gross revenues of $56,000 in the twelve months preceding January 31, 2020, and cost of goods sold of $0.  The application was denied as a duplicate.

27.    On or about April 15, 2020, **STEVENSON** submitted and caused to be submitted a false and fraudulent EIDL application to the SBA on behalf of Stevenson Enterprise in which she claimed a business establishment date of January 15, 2000, gross revenues of $49,000 in the twelve months preceding January 31, 2020, and cost of goods sold of $0. The application was denied as a duplicate.

Sylvia Stevenson EIDL

28.     On or about June 16, 2020, **STEVENSON** submitted and caused to be submitted a false and fraudulent EIDL application to the SBA on behalf of Sylvia Stevenson, an LLC. **STEVENSON** listed the primary address of the business as 1756 Thunderbird Drive, Florissant, Missouri 63022.  The application reported gross revenues of $49,000 for the twelve months prior to January 31, 2020, and cost of goods sold of $2,500.

29.     **STEVENSON** also submitted a Targeted Advance Application for Sylvia Stevenson.  The only income reported for any business owned by Sylvia Stevenson for the tax period ending December 31, 2019, was for Stevenson Enterprise which had already received EIDL advance funds and loan proceeds.

30.     **STEVENSON**'s representations on the June 16, 2020, Sylvia Stevenson application caused the SBA to approve EIDL loan number 9551687900 and deposit funds into the Stevenson Income Tax Service U.S. Bank account ending in 0544:

    a.      $1,000 on June 22, 2020;

    b.      $22,300 on June 23, 2020;

    c.      $5,000 on July 7, 2021; and

    d.      $9,000 on July 8, 2021.

Capris Entertainment LLC EIDL

31.     On or about April 2, 2020, **STEVENSON** submitted and caused to be submitted a false and fraudulent EIDL application to the SBA on behalf of Capris Entertainment LLC d/b/a Capris Lounge in which she stated the business was established on March 1, 2020, had two employees as of January 31, 2020, gross revenues of $118,451 in the twelve months preceding January 31, 2020, and costs of goods sold of $45,000.

32.     **STEVENSON** also submitted a false and fraudulent application for a Targeted EIDL Advance in which she falsely listed gross receipts of $203,749 in the twelve months preceding January 31, 2020; including gross receipts prior to the establishment of Capris on November 25, 2019.  There is no record of a tax return being filed for Capris Entertainment LLC for the tax period ending December 31, 2019.

33.     **STEVENSON**'s materially false and fraudulent representations on the April 2, 2020, Capris application caused the SBA to approve EIDL loan number 9219137810 and deposit funds into the Capris U.S. Bank account ending in 8096:

        a.      $2,000 on April 28, 2020;

        b.      $34,700 on June 10, 2020; and

        c.      $26,439 on May 24, 2021.

Capris Entertainment LLC PPP Loan

34.     On or about April 12, 2021 **STEVENSON** submitted and caused to be submitted a false and fraudulent PPP loan application on behalf of Capris to U.S. Bank with the intent to obtain loan proceeds from U.S. Bank.

35.     **STEVENSON** falsely represented on the PPP loan application that the average monthly payroll for Capris was $7,170, when, in truth and fact, Capris did not begin payroll payments until June 2020.

36.     In support of her contention that Capris Entertainment LLC was in operation prior to February 15, 2020, **STEVENSON** submitted a false Missouri Retail Sales License which purported to have been issued on February 14, 2020, for a "LIQUOR LICENSE." **STEVENSON** also submitted a nearly identical Missouri Retail Sales License which purported to have been issued on February 14, 2020, without "LIQUOR LICENSE."

9

37.     **STEVENSON** caused U.S. Bank to transfer $17,925, the entire amount of the PPP loan into Capris U.S. Bank account ending in 8096.

38.     **STEVENSON** transferred PPP loan proceeds to Capris U.S. Bank account ending in 8104 then to other individuals and to the Internal Revenue Service.

39.     On or about June 25, 2021, **STEVENSON** submitted and caused to be submitted a fraudulent application for PPP loan forgiveness on behalf of Capris. As a result of **STEVENSON**'S false and fraudulent representations in the forgiveness application, the SBA forgave the PPP loan for Capris.

<u>COUNTS I - V</u>
**Bank Fraud (18 U.S.C. § 1344)**

40.     Paragraphs 1 through 35 are realleged and incorporated by reference as if fully set forth herein.

41.     On the dates set forth below, in the Eastern District of Missouri, and elsewhere, the defendant,

**SYLVIA STEVENSON,**

knowingly executed, and attempted to execute, the scheme and artifice described above, to defraud a financial institution, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, in that **STEVENSON** submitted and caused to be submitted fraudulent EIDL applications to the SBA, as described below for each count, each submission constituting a separate count:

10

| Count | Approx. Date | Summary |
|-------|-------------|---------|
| I | March 31, 2020 | STEVENSON submitted and caused to be submitted a fraudulent EIDL loan application on behalf of Stevenson Enterprise Company d/b/a Stevenson Income Tax Service |
| II | April 2, 2020 | STEVENSON submitted and caused to be submitted a fraudulent EIDL loan application on behalf of Capris Entertainment LLC d/b/a Capris Lounge |
| III | April 6, 2020 | STEVENSON submitted and caused to be submitted a fraudulent EIDL loan application on behalf of Stevenson Enterprise Company d/b/a Stevenson Income Tax Service |
| IV | April 15, 2020 | STEVENSON submitted and caused to be submitted a fraudulent EIDL loan application on behalf of Stevenson Enterprise Company d/b/a Stevenson Income Tax Service |
| V | June 16, 2020 | STEVENSON submitted and caused to be submitted a fraudulent EIDL loan application on behalf of Sylvia Stevenson, an LLC |

All in violation of Title 18, United States Code, Section 1344.

## COUNT VI

42.     Paragraphs 1 through 35 are realleged and incorporated by reference as if fully set forth herein.

43.     On or about April 21, 2021, in the Eastern District of Missouri, and elsewhere, the defendant,

### SYLVIA STEVENSON,

executed and attempted to execute the scheme and artifice described above, to defraud a financial institution, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of a financial institution, by means of false and fraudulent

11

pretenses, representations, and promises, in that STEVENSON submitted and caused to be submitted a fraudulent PPP loan application to U.S. Bank, a financial institution and third-party participating lender in the PPP, for approximately $17,925 on behalf of Capris Entertainment LLC d/b/a Capris Lounge.

All in violation of Title 18, United States Code, Section 1344.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.      Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1344, as set forth in Counts I-VI, the defendant shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations.  Subject to forfeiture is a sum of money equal to the total value of property constituting or derived from proceeds obtained directly or indirectly as a result of such violations, which is at least $129,725.

2.      If any of the property described above, as a result of any act or omission of the Defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without

12

difficulty, the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____

JEANNETTE S. GRAVISS, #44483MO
Assistant United States Attorney

13